# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Offices, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

FILED
Nov 21 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

THOMAS H. ANDREWS,        )
        Appellant,        )
        vs.        )        No. 29A02-1112-MI-1166
STATE OF INDIANA,        )
        Appellee.        )

APPEAL FROM THE HAMILTON CIRCUIT COURT
The Honorable Paul A. Felix, Judge
Cause No. 29C01-1101-MI-49

**November 21, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Thomas Andrews ("Andrews") filed a petition in Hamilton Circuit Court requesting that his name be removed from Indiana's sex offender registry. Specifically,

Andrews, who was convicted of sex offenses in Massachusetts in 1984, argued that his name should be removed from the registry pursuant to our supreme court's decision in Wallace v. State, 905 N.E.2d 371 (Ind. 2009). Because we conclude that requiring Andrews to register as a sex offender violates Article 1, Section 24 of the Indiana Constitution prohibiting ex post facto laws, and that Indiana state courts do not have the authority to consider whether federal statutory penalties attach to Andrews's conduct, we reverse and remand with instructions to the trial court to grant Andrews's petition for removal from the sex offender registry.

**Facts and Procedural History**

In 1984, a grand jury in the Commonwealth of Massachusetts indicted Andrews for the following offenses under two separate cause numbers: six counts of rape and abuse of a child under cause number 84-1074 and two counts of indecent assault and battery of a child under the age of fourteen years under cause number 84-1075. Andrews pleaded guilty to four of the six counts of rape and abuse of a child and to both counts of assault and battery of a child. The court imposed consecutive sentences for the convictions under the separate cause numbers, and in the aggregate, Andrews was ordered to serve a minimal term of executed prison time with several years of probation. Ultimately, Andrews was discharged from his probation for all convictions on or about December 14, 1989.

In 1993, Andrews, who had married, moved to Indiana to be closer to his wife's family. In 1996, Andrews moved to Colorado, but then returned to Indiana in 1997. He has resided in Indiana since 1997. For over twenty-five years, Andrews has owned and

2

operated a business that was eventually incorporated under Indiana law and does business as Pro Image & Associates, LLC. Andrews works from his home address, but travels to locations in and out of the state to meet with his company's clients.

In 2006, the State of Indiana notified Andrews that he was required to register as a sexually violent predator, and that he was required to register for life. Andrews registered as required by the State. But, on January 6, 2011, Andrews filed a petition requesting removal of his name from the registry and arguing that pursuant to our supreme court's 2009 decision in Wallace v. State, 905 N.E.2d 371 (Ind. 2009), he is not required to register as a sex offender. The State opposed Andrews's petition and the parties filed cross-motions for summary judgment.

The summary judgment hearing was held on November 17, 2011. At the hearing, the State argued that Wallace did not apply to Andrews's circumstances, but also that Andrews was required to register as a sex offender under the federal Sex Offender Registration and Notification Act, which Congress passed in 2006 (hereinafter referred to as "USSORNA"). On November 30, 2011, the trial court granted the State's motion for summary judgment and denied Andrews's motion. Andrews now appeals.[1]

---

[1] We heard oral argument in this case on September 5, 2012, at the Robert H. McKinney School of Law in Indianapolis, Indiana. We commend counsel for their superb oral advocacy, and we thank the students, faculty, and school personnel for their hospitality.

## I. Indiana's Sex Offender Act and Wallace v. State

Indiana's Sex Offender Registration Act ("INSORA") currently codified at Indiana Code chapter 11-8-8 was first enacted in 1994.[2] INSORA required persons convicted of certain sex crimes to register as sex offenders. But sex offenders convicted in another jurisdiction prior to the act's June 30, 1994 effective date were not required to register. Moreover, the duty to register was prospective only and terminated when the offender was no longer on probation or discharged from parole. See Wallace, 905 N.E.2d at 375. Therefore, when Andrews moved to Indiana, he was not required to register as a sex offender under INSORA in effect at that time.

But in 2001, INSORA was amended to require all offenders convicted of certain sex offenses to register as sex offenders regardless of the date of their conviction. This change in the law was challenged under the Ex Post Facto Clause contained in the Indiana Constitution in Wallace. In that case, Wallace was charged with two counts of child molesting in 1988, and pleaded guilty to one count in 1989. Wallace completed his sentence and probation in 1992, two years before the General Assembly first passed the Act requiring persons convicted of child molesting to register as sex offenders.

In 2003, Wallace was notified that he was required to register as a sex offender. Wallace insisted that he was not required to register because his 1989 plea agreement did not require him to do so. Thereafter, Wallace was charged with Class D felony failing to register as a sex offender, and was found guilty as charged.

---

[2] The Act was formerly codified in Indiana Code chapter 5-2-12.

4

On appeal of his conviction, Wallace claimed that INSORA violated the ex post facto prohibitions of Article 1, Section 24 of the Indiana Constitution and Article 1, Section 10 of the United States Constitution because his crime was committed and his sentence was served before the Act was enacted in 1994. Our supreme court initially observed:

> The United States Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." Among other things "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" The underlying purpose of the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties.

Id. at 377 (internal citations omitted). The court then addressed Wallace's claims only under the Indiana Constitutional provision[3] and applied the "intent-effects" test to determine whether INSORA imposed punishment. After assuming without deciding that the General Assembly intended INSORA to be non-punitive, the court considered "whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty." Id. at 378.

---

[3] The court observed that Indiana's Act was similar to Alaska's Act, which the United States Supreme Court concluded does not violate the Ex Post Facto Clause of the United States Constitution. Id. at 378 (citing Smith v. Doe, 583 U.S. 84 (2003)). However, the offender in Doe later challenged Alaska's Act under its State Constitution. The Alaska Supreme Court held that the Act's "registration, disclosure, and dissemination provisions violate the protection against ex post facto laws afforded by the Alaska Constitution as it applies to defendants who committed their crimes before the legislature enacted ASORA[.]" Doe v. State, 189 P.3d 999, 1019 (Alaska 2008).

5

To examine INSORA's effects, our supreme court applied seven factors promulgated by the United States Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963). Those factors are

> [1] [w]hether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

Id. at 379 (citing Mendoza–Martinez, 372 U.S. at 168–69 (footnotes omitted)).

The court made the following observations with regard to each of the seven factors: 1) "the Act's registration and notification provisions impose substantial disabilities on registrants" because "the Act imposes significant affirmative obligations and a severe stigma on every person to whom it applies[;]" 2) the Act's "dissemination provision at least resembles the [historical] punishment of shaming" and are "comparable to supervised probation or parole[;]" 3) the Act "overwhelmingly applies to offenses that require a finding of scienter for there to be a conviction[;]" 4) the Act's deterrent effect is substantial and promotes community condemnation of the offender, which are both included in the traditional aims of punishment; 5) the Act applies "only to behavior that is already, and exclusively, criminal[;]" 6) the "Act advances a legitimate purpose of public safety" to "protect the public from repeat offenders[;]" and 7) although the Act serves as a legitimate means to protect the public from sex offenders, the registration and disclosure requirements are not "tied to a finding that the safety of the public is

threatened" because "information on all sex offenders [is] available to the general public without restriction and without regard to whether the individual poses any particular future risk." Id. at 380-84.

After weighing the seven factors, and concluding that only the sixth factor weighed in favor of treating INSORA's effects as regulatory and non-punitive, the court concluded that as applied to Wallace, "the Act violates the prohibition on ex post facto laws contained in the Indiana Constitution because it imposes burdens that have the effect of adding punishment beyond that which could have been imposed when his crime was committed." Id. at 384. See also Hevner v. State, 919 N.E.2d 109, 112-13 (Ind. 2010) (concluding that as applied to Hevner, the Act violates the prohibition on ex post facto laws contained in the Indiana Constitution because on the date Hevner committed possession of child pornography, a first time offender was not classified as a sex offender under the Act); Cf. Jensen v. State, 905 N.E.2d 384, 394 (Ind. 2009) (concluding that the effects of the Act are non-punitive when applied to Jensen because the "broad and sweeping" disclosure requirements were in place and applied to Jensen at the time of his guilty plea in 2000; therefore requiring him to register for life under the 2006 amendment to the Act does not violate Indiana's constitutional prohibition against ex post fact laws); Herron v. State, 918 N.E.2d 682, 684 (Ind. Ct. App. 2009) (citing Jensen and concluding that the Act is not an ex post facto law as applied to Herron because he was required by Arizona to register as a sex offender when he committed his offense). In this case, Andrews argues that we need look no further than Wallace to determine that, as applied to Andrews, the Act violates Indiana's prohibition against ex post facto laws.

7

At the summary judgment hearing, the State conceded that if Andrews's offense had been committed in Indiana, like Wallace, Andrews would not be required to register under INSORA. Tr. pp. 33-34. But in its brief, the State argued because Andrews committed his offenses in Massachusetts he is not "entitled to the benefit of the ex post facto doctrine under the Indiana Constitution." Appellee's Br. at 19. The State also asserted that Andrews is required to register under Massachusetts law, and therefore he must register in Indiana as required by Indiana Code sections 11-8-8-4.5 and 5. Sections 11-8-8-4.5 and 5 define the term "sex offender" and "sex or violent offender" respectively and in part as "a person who is required to register as a sex offender in any jurisdiction[.]" And Indiana Code section 11-8-8-19(f) requires persons who must "register as a sex or violent offender in any jurisdiction" to "register for the period required by the other jurisdiction or the period described in" section 11-8-8-19, whichever is longer.

However, at the oral argument held in this appeal, the State conceded that Andrews is not required to register as a sex offender in Massachusetts as a matter of law. Specifically, Massachusetts's sex offender registration system is distinct from Indiana's in that offenders who committed their crimes prior to the law's enactment are entitled to a hearing before the Sex Offender Registry Board to determine whether the offender poses a risk of reoffending or is a danger to the community, and therefore, whether the sex offender is required to register at all. See Doe v. Sex Offender Registry Bd., 882 N.E.2d 298, 308-09 (Mass. 2008).

8

In light of its concession that Andrews is not required to register under INSORA, the State is left only with its argument that Andrews has an independent duty to register under federal law. In 1994, Congress began to require States to maintain federally compliant systems for sex-offender registration and community notification. Failure to do so resulted in the loss of certain law enforcement funds.

"In an effort to make these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted [USSORNA] as part of the Adam Walsh Child Protection and Safety Act" for the stated purpose of protecting the public from sex offenders. Carr v. United States, 130 S.Ct. 2229 (2010); 42 U.S.C. § 16901. Rather than establishing a federal agency to implement USSORNA, Congress, through its spending power, Article I, Section 8, directed all states and the District of Columbia to create local registries that comply with specific national standards. 42 U.S.C. §§ 16911(10), 16912(a). Included in its many provisions,

> [US]SORNA instructs States to maintain sex-offender registries that compile an array of information about sex offenders; to make this information publicly available online; to share the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex-offender registry; and to "provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter." Sex offenders, in turn, are required to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," and to appear in person periodically to "allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered."

9

Id. at 2240-41 (citing 42 U.S.C. §§ 16913, 16914, 16918-21).[4]

USSORNA imposes a federal obligation on all sex offenders to register in each jurisdiction where the offender resides, works, and goes to school. Specifically, 42 U.S.C. § 16913, USSORNA's registry requirements provide:

(a) In general

A sex offender [defined to include any offender who was convicted of a sex offense] shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. . . .

(b) Initial registration

The sex offender shall initially register [either] before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or [for those not sentenced to prison] not later than 3 business days after being sentenced. . . .

(c) Keeping the registration current

A sex offender shall [update his registration within] 3 business days after each change of name, residence, employment, or student status [by] appear[ing] in person in at least 1 jurisdiction involved . . . and inform[ing] that jurisdiction of all [relevant] changes. . . .

(d) Initial registration of sex offenders unable to comply with subsection (b)

The Attorney General shall have the authority to specify the applicability of the [registration] requirements . . . to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

The Act also established a federal criminal offense covering any person who (1) "is required to register under [USSORNA]," (2) "travels in interstate or foreign

---

[4] Like most states, Indiana has not fully implemented USSORNA.

10

commerce," and (3) "knowingly fails to register or update a registration." 18 U.S.C. § 2250. Congress's intent in enacting 18 U.S.C. § 2250 was simply "to subject to federal prosecution sex offenders who elude [US]SORNA's registration requirements by traveling in interstate commerce." Carr, 130 S.Ct. at 2241.

The United States Supreme Court has considered two challenges to USSORNA by convicted sex offenders whose criminal acts occurred prior to USSORNA's enactment, but because the issues raised were able to be resolved under the plain language of the Act, the Court declined to consider the petitioners's constitutional challenges to USSORNA. In Carr, the United States Supreme Court examined whether 18 U.S.C. § 2250 "applies to sex offenders whose interstate travel occurred prior to USSORNA's effective date." 130 S.Ct. at 2233. The offender in Carr was convicted of a sex offense and completed his interstate travel prior to USSORNA's effective date.

After examining the plain language of the statute, the Court held that "preenactment travel falls outside the statute's compass" and stated:

> Had Congress intended to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under § 2250, it easily could have adopted language to that effect. That it declined to do so indicates that Congress instead chose to handle federal and state sex offenders differently. . . . To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with [US]SORNA's registration requirements by federal sex offenders -persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after [US]SORNA's enactment, they use the channels of interstate commerce in evading a State's reach.

Id. at 2238.

In Reynolds v. United States, 132 S.Ct. 975 (2012), the Court considered "the date on which this federal registration requirement took effect with respect to sex offenders convicted before [USSORNA] became law." Id. at 978. The sex offender in Reynolds was convicted in 2001, but engaged in interstate travel after USSORNA's enactment in 2007 and failed to update his registration. The offender relied on the following provision in 42 U.S.C. section 16913 to argue that USSORNA did not apply to him:

> The Attorney General shall have the authority to specify the applicability of the [registration] requirements . . . to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

On February 28, 2007, "the Attorney General promulgated an Interim Rule specifying that '[t]he requirements of [the Act] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.'" Reynolds, 132 S.Ct. at 978 (citing 72 Fed.Reg. 8897 (codified at 28 C.F.R. § 72.3)). Despite promulgation of this Rule, the Court held that USSORNA's registration requirements do not apply to pre-USSORNA offenders until the Attorney General "so specifies."[5] Id. at 984.

---

[5] The Reynolds Court did not consider whether under the February 28, 2007 Interim Rule, the Attorney General had **validly specified** the application of the registration requirements to pre-Act offenders. Pre- and post-Reynolds, there has been significant discussion among the federal circuits as to whether the Interim Rule or subsequent guidelines issued by the Attorney General fulfill the requirements of 42 U.S.C. section 16913(d). See e.g. United States v. Gould, 568 F.3d 459, 469-70 (4th Cir. 2009) (noting that the Fourth, Seventh, and Eleventh Circuits have concluded that the Interim Rule was a valid specification of the applicability of the registration requirements to Pre-Act offenders); but see U.S. v. Stevenson, 676 F.3d 557, 560 (6th Cir. 2012) (holding that issuance of the rule did not comply with the notice and comment procedures prescribed by the Administrative Procedures Act); United States v. Valverde, 628 F.3d 1159, 1162 (9th Cir. 2010).

12

While the Supreme Court has declined to consider ex post facto challenges to USSORNA, the federal circuit courts of appeals have generally rejected ex post facto claims. In particular, the State argues the Seventh Circuit's rejection of such a challenge in United States v. Leach, 639 F.3d 769 (7th Cir. 2011), controls the outcome of this case. The sex offender at issue in Leach was convicted of child molesting in Indiana in 1990. Just before his release from prison in 1994, Indiana's sex offender registration statute went into effect. When he moved from Indiana to South Carolina in 2008, he failed to notify law enforcement officials in either state that he had changed his residence. Although he eventually reported his move to an Indiana child support enforcement official, he never notified South Carolina authorities of his residence within that jurisdiction.

Leach was eventually arrested and returned to Indiana where he was indicted in federal court for failing to register as a sex offender after traveling in interstate commerce in violation of USSORNA. Leach moved to dismiss the indictment alleging he was indicted in violation of the Ex Post Facto Clauses of the United States and Indiana Constitutions. The district court denied the motion, and Leach entered a conditional guilty plea while preserving his right to appeal.[6]

---

[6] The Seventh Circuit briefly addressed the issue of venue because Leach was arrested in South Carolina. However, because Leach was required to update his registration in Indiana when he left the state under USSORNA, but failed to do so, the court observed that venue was proper in either Indiana or South Carolina had the federal government opted to prosecute there. Id. at 772.

13

The Seventh Circuit first addressed Leach's argument that USSORNA violates the Ex Post Facto Clause under the Indiana Constitution and his reliance on Wallace v. State. The court rejected the challenge, stating:

> [T]he question before us is not whether Indiana has adopted a compliant registration system (an issue relating only to its entitlement to certain federal funds, see Carr, 130 S.Ct. at 2232), nor is it whether [US]SORNA—a federal statute—"complies" with the law of any particular state. The Supremacy Clause establishes that state constitutional provisions cannot override federal statutes. See U.S. CONST. art. VI, cl. 2; see also United States v. Baer, 235 F.3d 561, 562 (10th Cir.2000). And even if Indiana's system were flawed (a point on which we express no opinion), Leach was also required to register in South Carolina and did not. We are thus left only with Leach's argument that [US]SORNA violates the Ex Post Facto Clause of the United States Constitution.

Id. at 772. The Seventh Circuit then rejected Leach's federal ex post facto claim because "[a] sex offender violates the statute when, at any time after [US]SORNA was enacted, he travels in interstate commerce and then fails to register. Because the law targets only the conduct undertaken by convicted sex offenders after its enactment, it does not violate the Ex Post Facto Clause." Id. at 773 (citations omitted). Finally, the court stated that USSORNA's registration requirements are triggered without respect to the date of the conviction and federal guidelines require pre-USSORNA offenders to comply with those requirements. "But that does not make them retrospective: [US]SORNA merely creates new, prospective legal obligations based on the person's prior history." Id. at 773.

Turning to our consideration of whether Andrews is required to register on Indiana's state registry in light of the Leach decision, we first observe that Leach's circumstances are factually distinct from those in this case. Leach failed to re-register as a sex offender when he moved to South Carolina in 2008. He was then prosecuted *under*

14

*federal law,* in federal district court under 18 U.S.C. § 2250. The Seventh Circuit briefly considered Leach's <u>Wallace</u> argument, but in the end, indicated that whether Leach was required to register under Indiana's Act was unavailing because he was required to register in South Carolina under USSORNA, and failed to do so.[7] <u>See</u> <u>id</u>. at 722.

Indiana is the only state that has ever required Andrews to register as a sex offender, and he has resided in Indiana since 1997. But while Andrews may have a federal duty to register under USSORNA if he engages in interstate travel, and could be subject to prosecution in federal district court under 18 U.S.C. § 2250, if he fails to do so, this is not the issue before us.

---

[7] The U.S, Department of Justice recognizes that sex offender registration is conducted at the state level and that each jurisdiction has the authority to determine which offenders will be required to register. Moreover, the federal government acknowledges that despite SORNA, a jurisdiction should not register an offender unless the offender is required to register under the jurisdiction's laws. Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, U.S. Department of Justice, <u>Sex Offender Registration and Notification in the United States: Current Case Law and Issues</u> (July 2012).

Andrews has filed his petition in Indiana state court seeking removal of his name from Indiana's sex offender registry. After acknowledging that our state sex offender registry law does not run afoul of the Ex Post Facto Clause of the United States Constitution, our supreme court concluded in Wallace that Hoosiers are entitled to greater protection under the prohibition on ex post facto laws contained in the Indiana Constitution.[8] Greater protection of Hoosiers's rights under the Indiana Constitution is

---

[8] Acknowledging that some provisions of USSORNA may not pass state constitutional muster, Congress enacted 42 U.S.C. § 16925, which contains the stated goal of bringing states into substantial compliance with USSORNA to assist the state in avoiding the loss of federal funding. Specifically, that section provides in pertinent part:

(b) State constitutionality

(1) In general

When evaluating whether a jurisdiction has substantially implemented this subchapter, the Attorney General shall consider whether the jurisdiction is unable to substantially implement this subchapter because of a demonstrated inability to implement certain provisions that would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court.

(2) Efforts

If the circumstances arise under paragraph (1), then the Attorney General and the jurisdiction shall make good faith efforts to accomplish substantial implementation of this subchapter and to reconcile any conflicts between this subchapter and the jurisdiction's constitution. In considering whether compliance with the requirements of this subchapter would likely violate the jurisdiction's constitution or an interpretation thereof by the jurisdiction's highest court, the Attorney General shall consult with the chief executive and chief legal officer of the jurisdiction concerning the jurisdiction's interpretation of the jurisdiction's constitution and rulings thereon by the jurisdiction's highest court.

(3) Alternative procedures

If the jurisdiction is unable to substantially implement this subchapter because of a limitation imposed by the jurisdiction's constitution, the Attorney General may determine that the jurisdiction is in compliance with this chapter if the jurisdiction has made, or is in the process of implementing reasonable alternative procedures or accommodations, which are consistent with the purposes of this chapter.

not an uncommon principle in our state's jurisprudence.[9] See Wallace, 905 N.E.2d at 378 (quoting State v. Gerschoffer, 763 N.E.2d 960, 965 (Ind. 2002)) (stating "[t]he Indiana Constitution has unique vitality, even where its words parallel federal language").

Andrews, who on the record before us is an apparently rehabilitated and productive citizen of our state, was convicted of a sex offense almost thirty years ago, and well before Indiana enacted INSORA. Accordingly, pursuant to our supreme court's opinion in Wallace, we must conclude that Andrews's petition for removal of his name from Indiana's sex offender registry should have been granted.

Reversed and remanded with instructions to grant Andrews's petition for removal of his name and any other identifying information from Indiana's sex offender registry.

VAIDIK, J. and BARNES, J., concur.

---

[9] See e.g. Litchfield v. State, 824 N.E.2d 356, 363 (Ind. 2005) (noting that searches of trash are generally permissible under the Fourth Amendment, but applying a stricter analysis under Article 1, Section 11 of the Indiana Constitution and concluding that generally it is "not reasonable for law enforcement to search indiscriminately through people's trash").