# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**KATHLEEN M. SWEENEY**
Indianapolis, Indiana



FILED
Dec 03 2012, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 64A05-1203-MI-113 |
| | ) | |
| TERRY J. HOUGH, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
Cause No. 64D01-1008-MI-87812

December 3, 2012

**OPINION – FOR PUBLICATION**

**MATHIAS**, Judge

Terry Hough ("Hough") filed a petition in Porter Superior Court requesting that his name be removed from Indiana's sex offender registry. Specifically, Hough, who was convicted of rape in Pennsylvania in 1993, argued that his name should be removed from the registry pursuant to our supreme court's decision in Wallace v. State, 905 N.E.2d 371 (Ind. 2009). The trial court granted Hough's petition and the State appeals. Specifically, the State argues that Hough should not be removed from the sex offender registry because he would still be required to register under Pennsylvania's registry law, and he has an independent duty to register as a sex offender under the federal Sex Offender Registration and Notification Act.

We affirm.

**Facts and Procedural History**

In 1993, Hough was convicted of rape in Montgomery County, Pennsylvania. He was ordered to serve two to five years incarceration. Hough was released to parole in 1997, and he completed his parole in 1998. Shortly after completing his parole, Hough moved to Indiana.

Pennsylvania enacted its first sex offender registry law, known as Megan's law, in 1996, while Hough was incarcerated in that jurisdiction. But Pennsylvania officials did not require Hough to register as a sex offender upon release from incarceration and/or parole because he notified Pennsylvania officials of his move to Indiana. Hough was told that he would be subject to Indiana's registration requirement, and he did register in Indiana. Appellant's App. p. 32. Hough also registered in Illinois because he was employed in that state. However, in 2007, Hough received a notice from the State of

2

Illinois that he was no longer required to register as a sex offender. Appellant's App. p. 34.

On August 19, 2010, Hough filed a petition to remove himself from the Indiana sex offender registry. Hough claimed that he should be removed because his conviction occurred before Indiana and Pennsylvania enacted their sex offender registry laws, and argued that, pursuant to Wallace v. State, 905 N.E.2d 371 (Ind. 2009), his petition should be granted. In response, the State argued that under Pennsylvania's current sex offender registry law, Hough would be required to register for life, and therefore, Wallace is inapplicable to Hough's situation. The State also claimed that Hough has an independent duty to register under the federal Sex Offender Registration and Notification Act.

After holding a hearing on Hough's petition, the trial court issued an order granting Hough's petition to remove his name from the Indiana sex offender registry. The State filed a motion to correct error, which the trial court denied on February 10, 2012. The State now appeals.

## I. Indiana's Sex Offender Act and Wallace v. State

Indiana's Sex Offender Registration Act ("INSORA") currently codified at Indiana Code chapter 11-8-8 was first enacted in 1994.[1] INSORA required persons convicted of certain sex crimes to register as sex offenders. But sex offenders convicted in another jurisdiction prior to the Act's June 30, 1994 effective date were not required to register. Moreover, the duty to register was prospective only and terminated when the

---

[1] The Act was formerly codified in Indiana Code chapter 5-2-12.

3

offender was no longer on probation or discharged from parole. See Wallace, 905 N.E.2d at 375.

But in 2001, INSORA was amended to require all offenders convicted of certain sex offenses to register as sex offenders regardless of the date of their conviction. This change in the law was challenged under the Ex Post Facto Clause contained in the Indiana Constitution in Wallace. In that case, Wallace was charged with two counts of child molesting in 1988, and he pleaded guilty to one count in 1989. Wallace completed his sentence and probation in 1992, two years before the General Assembly first passed the Act requiring persons convicted of child molesting to register as sex offenders.

In 2003, Wallace was notified that he was required to register as a sex offender. Wallace insisted that he was not required to register because his 1989 plea agreement did not require him to do so. Thereafter, Wallace was charged with Class D felony failing to register as a sex offender, and was found guilty as charged.

On appeal of his conviction, Wallace claimed that INSORA violated the ex post facto prohibitions of Article 1, Section 24 of the Indiana Constitution and Article 1, Section 10 of the United States Constitution because his crime was committed and his sentence was served before the Act was enacted in 1994. Our supreme court initially observed:

> The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." Among other things "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" The underlying purpose of the Ex Post Facto Clause is to

4

give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties.

Id. at 377 (internal citations omitted). The court then addressed Wallace's claims only under the Indiana Constitutional provision[2] and applied the "intent-effects" test to determine whether INSORA imposed punishment. After assuming without deciding that the General Assembly intended INSORA to be non-punitive, the court considered "whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty." Id. at 378.

To examine INSORA's effects, our supreme court applied seven factors promulgated by the United States Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963). Those factors are

> [1] [w]hether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

Id. at 379 (citing Mendoza–Martinez, 372 U.S. at 168–69 (footnotes omitted)).

---

[2] The court observed that Indiana's Act was similar to Alaska's Act, which the United States Supreme Court concluded does not violate the Ex Post Facto Clause of the United States Constitution. Id. at 378 (citing Smith v. Doe, 583 U.S. 84 (2003)). However, the offender in Doe later challenged Alaska's Act under its State Constitution. The Alaska Supreme Court held that the Act's "registration, disclosure, and dissemination provisions violate the protection against ex post facto laws afforded by the Alaska Constitution as it applies to defendants who committed their crimes before the legislature enacted ASORA[.]" Doe v. State, 189 P.3d 999, 1019 (Alaska 2008).

5

The court made the following observations with regard to each of the seven factors: 1) "the Act's registration and notification provisions impose substantial disabilities on registrants" because "the Act imposes significant affirmative obligations and a severe stigma on every person to whom it applies[;]" 2) the Act's "dissemination provision at least resembles the [historical] punishment of shaming" and are "comparable to supervised probation or parole[;]" 3) the Act "overwhelmingly applies to offenses that require a finding of scienter for there to be a conviction[;]" 4) the Act's deterrent effect is substantial and promotes community condemnation of the offender, which are both included in the traditional aims of punishment; 5) the Act applies "only to behavior that is already, and exclusively, criminal[;]" 6) the "Act advances a legitimate purpose of public safety" to "protect the public from repeat offenders[;]" and 7) although the Act serves as a legitimate means to protect the public from sex offenders, the registration and disclosure requirements are not "tied to a finding that the safety of the public is threatened" because "information on all sex offenders [is] available to the general public without restriction and without regard to whether the individual poses any particular future risk." Id. 380-84.

After weighing the seven factors, and concluding that only the sixth factor weighed in favor of treating INSORA's effects as regulatory and non-punitive, the court concluded that as applied to Wallace, "the Act violates the prohibition on ex post facto laws contained in the Indiana Constitution because it imposes burdens that have the effect of adding punishment beyond that which could have been imposed when his crime was committed." Id. at 384. See also Hevner v. State, 919 N.E.2d 109, 112-13 (Ind. 2010)

6

(concluding that as applied to Hevner, the Act violates the prohibition on ex post facto laws contained in the Indiana Constitution because on the date Hevner committed possession of child pornography, a first time offender was not classified as a sex offender under the Act); Cf. Jensen v. State, 905 N.E.2d 384, 394 (Ind. 2009) (concluding that the effects of the Act are non-punitive when applied to Jensen because the "broad and sweeping" disclosure requirements were in place and applied to Jensen at the time of his guilty plea in 2000; therefore requiring him to register for life under the 2006 amendment to the Act does not violate Indiana's constitutional prohibition against ex post facto laws); Herron v. State, 918 N.E.2d 682, 684 (Ind. Ct. App. 2009) (citing Jensen and concluding that the Act is not an ex post facto law as applied to Herron because he was required by Arizona to register as a sex offender when he committed his offense).  In this case, Hough argues that we need look no further than Wallace to determine that, as applied to Hough, the Act violates Indiana's prohibition against ex post facto laws.

The State does not dispute that if Hough's offense had been committed in Indiana, he would not be required to register for the reasons expressed in Wallace.  However, the State asserts that Hough is required to register for life under Pennsylvania's sex offender registry law, and therefore he must register in Indiana as required by Indiana Code sections 11-8-8-4.5 and 5.  Sections 11-8-8-4.5 and 5 define the term "sex offender" and "sex or violent offender" respectively and in part as "a person who is required to register as a sex offender in any jurisdiction[.]"  And Indiana Code section 11-8-8-19(f) requires persons who must "register as a sex or violent offender in any jurisdiction" to "register

7

for the period required by the other jurisdiction or the period described in" section 11-8-8-19, whichever is longer.

The State claims that Hough would be required to register as a sex offender for life in Pennsylvania if he resided in that state. See 42 Pa.C.S.A. § 9795.1(b). While Hough was serving his sentence for rape, Pennsylvania enacted its first sex offender registration law, known as Megan's Law, and the registration portion of the statute took effect on April 21, 1996. When Hough was released from prison in 1997, he would have been classified as a sexually violent predator under Megan's Law,[3] which might have required that he register as a sex offender for life. See Commonwealth v. Williams, 733 A.2d 593, 595 (Pa. 1999). But the Williams court held that the sexually violent predator provisions of the Act violated the procedural due process guarantees of the Fourteenth Amendment, and struck all of the relevant provisions of Megan's Law I pertaining to sexually violent predators. Id. at 607-08.

Thereafter, on May 10, 2000, Megan's Law I was amended, and the amended version, Megan's Law II, went into effect on July 9, 2000. Under Megan's Law II, which is the law currently in effect in Pennsylvania, an offender convicted of rape is required to register for life. See 42 Pa.C.S.A. § 9795.1(b). Pennsylvania's courts have repeatedly held that the Megan's Law's registration requirements are not punitive and do not implicate the ex post facto clauses of the federal and state constitutions. See e.g.

---

[3] Had Hough remained in Pennsylvania, he would have been presumed to be a sexually violent predator, but he would have been assessed by the State Board to Assess Sexually Violent Predators. The Board was required to submit a written report to the trial court, and the court would then make an ultimate determination of the offender's status. See Commonwealth v. Williams, 733 A.2d 593, 597 (Pa. 1999).

Commonwealth v. Williams, 832 A.2d 962, 984 (Pa. 2003). We agree with the State that if he resided in Pennsylvania, Hough would be required to register as a sex offender for life. Commonwealth v. Wilson, 910 A.2d 10, 15-16 (Pa. 2006); Commonwealth v. Gaffney, 733 A.2d 616, 622 (Pa. 1999).

Our court recently considered circumstances similar to those presented in this case in Burton v. State, No. 45A03-1201-CR-6 (Nov. 8, 2012 Ind. Ct. App. 2012). The sex offender in Burton was convicted in Illinois of aggravated criminal sexual assault in 1987. After he served his six-year sentence, Illinois enacted its sex offender registration law under which Burton was required to register as a sex offender for ten years. He was later convicted of sex offender registration violations in 2003 and 2007. Because the ten-year registration period started over after his 2007 violation, Illinois law would require Burton to register in Illinois if he resided there. After moving to Indiana in 2009, he was convicted of failing to register as a sex or violent offender in our state and was sentenced to one year incarceration. When he was released from prison, Burton registered as a sex offender until October 2009, but failed to register thereafter. In April 2011, Burton was charged with failing to register pursuant to Indiana Code section 11-8-8-17. Burton unsuccessfully moved to dismiss the charges on the ground that the requirement to register violated the ex post facto provision of the Indiana Constitution.

Responding to Burton's appeal of the denial of his motion to dismiss, the State argued that Burton was required to register in Illinois when he moved to Indiana and therefore the requirement to register in Indiana imposed no additional burden on him. Observing that if Burton's sex offense had occurred in Indiana, Wallace would dictate

9

dismissal of the charges, we concluded that as a resident of Indiana, "Burton has the protection of our constitution as to the application of our [INSORA], without regard to the fact that he was convicted of the qualifying sex offense in Illinois. It is for us, not Illinois, to determine who is required to register under our" Act.[4] Id. at 7.

We also rejected the State's claim that Burton should be required to register in Indiana under the Full Faith and Credit Clause of the United States Constitution. Our court concluded that the clause was not implicated in Burton's case because the "requirement by Illinois under its law that Burton register as a sex offender in Illinois is no more than that; it is not a requirement to register anywhere else. . . . Our decision has no effect on the enforcement of the Illinois requirement." Id. at 9.

We reach the same conclusion in this case. As a resident of Indiana since 1998, Hough is entitled to the protections afforded to him by the Indiana Constitution. Therefore, even though he would be required to register as a sex offender under Pennsylvania's laws, Indiana's law controls. Because he was convicted of a sex offense before Indiana enacted INSORA, requiring Hough to register as a sex offender would violate Indiana's constitutional prohibition against ex post facto laws. See Wallace, 905 N.E.2d at 384.

We are mindful of the State's concern that by failing to require registration, Indiana will become a haven for sex offenders. However, we can reasonably conclude

---

[4] We also rejected the State's argument that because Burton's continued obligation to register in Illinois stemmed from his 2007 conviction for failure to register, his obligation to register in Indiana does not violate our state's ex post facto clause. Our court concluded that the date of Burton's 1987 conviction and it is the law in place on the date of the offense that is relevant to the ex post facto analysis. Slip. op. at 8.

10

that the number of sex offenders who might not be required to register pursuant to our supreme court's decision in Wallace is relatively small. As our court noted in Burton, "[a]ny haven would be only for those who, under our constitution, could not be compelled to register in violation of our state's prohibition of ex post facto laws." Slip. op. at 9.

Finally, the State argues that Hough has a separate registration requirement under the federal Sex Offender Registration and Notification Act ("USSORNA"). We recently considered this argument in Andrews v. State, No. 29A02-1112-MI-1166 (Nov. 21, 2012 Ind. Ct. App. 2012). Like the circumstances presented in this case, Andrews was convicted of a sex offense in another state before Indiana enacted INSORA. The State conceded that Andrews was not required to register as a sex offender in Massachusetts, the state where he was convicted of a sex offense. Concluding that Andrews's duty to register as a sex offender under USSORNA and any resulting federal criminal prosecution if he fails to register was not dispositive of our resolution of whether he was required to register under INSORA, we observed:

> Indiana is the only state that has ever required Andrews to register as a sex offender, and he has resided in Indiana since 1997. But while Andrews may have a federal duty to register under USSORNA if he engages in interstate travel, and could be subject to prosecution in federal district court under 18 U.S.C. § 2250, if he fails to do so, this is not the issue before us.
>
> Andrews has filed his petition in Indiana state court seeking removal of his name from Indiana's sex offender registry. After acknowledging that our state sex offender registry law does not run afoul of the Ex Post Facto Clause of the United States Constitution, our supreme court concluded in Wallace that Hoosiers are entitled to greater protection under the prohibition on ex post facto laws contained in the Indiana Constitution. Greater protection of Hoosiers's rights under the Indiana Constitution is not

11

an uncommon principle in our state's jurisprudence.  See Wallace, 905 N.E.2d at 378 (quoting State v. Gerschoffer, 763 N.E.2d 960, 965 (Ind. 2002)) (stating "[t]he Indiana Constitution has unique vitality, even where its words parallel federal language").

Slip op. at 15-16.

Likewise, in the case before us, Indiana is the only state that currently requires Hough to register as a sex offender, and he has resided in our state since 1998.  Pursuant to our supreme court's decision in Wallace, to continue to require that Hough register as a sex offender for a conviction pre-dating the enactment of INSORA would violate Indiana's constitutional prohibition against ex post facto laws.  See Ind. Const. Art. 1, § 24; 905 N.E.2d at 384.  For all of these reasons, we affirm the trial court's order granting Hough's petition to remove his name from the Indiana sex offender registry.

Affirmed.

VAIDIK, J., and BARNES, J., concur.