*Department of Public Safety and Correctional Services v. John Doe*, Misc. No. 1, September Term 2013, and *Hershberger v. John Roe*, No. 103, September Term 2013, Opinion by Greene, J.

**STATUTORY INTERPRETATION – SEX OFFENDER REGISTRATION AND NOTIFICATION ACT ("SORNA")**

The federal Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, §§ 101-155, 120 Stat. 587, 590-611 (2006) (codified at 42 U.S.C. § 16901 *et seq*. and 18 U.S.C. § 2250) includes both directives to the states regarding the implementation of a sex offender registration scheme and directives to individual sex offenders to register in the state in which they reside, are employed, or are a student. Under Maryland law, the retroactive application of Maryland's sex offender registry is unconstitutional. *Doe v. Department of Public Safety & Correctional Services*, 430 Md. 535, 62 A.3d 123 (2013). Where SORNA includes a provision regarding the resolution of conflicts between the federal law and state constitutions, an individual to whom the registration requirement would be applied retroactively cannot be required to register involuntarily as a sex offender in Maryland.

Argued: May 6, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 1 and No. 103
September Term, 2013

Circuit Court for Washington County
Case No. 21-C-10-36507

DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONAL SERVICES

v.

JOHN DOE

Circuit Court for Wicomico County
Case No. 22-C-09-001573

GREGG HERSHBERGER

v.

JOHN ROE

Barbera, C.J.
Harrell
Greene
Adkins
McDonald
*Watts
Wilner, Alan M. (Retired, Specially
    Assigned),

JJ.

Opinion by Greene, J.
Harrell, J., concurs.

Filed: June 30, 2014

*Watts, J., participated in the hearing and
conference of this case but did not participate in
the decision and adoption of this opinion.

In *Doe v. Department of Public Safety & Correctional Services*, 430 Md. 535, 62 A.3d 123 (2013) ("*Doe I*"), we addressed the Maryland sex offender registration statute, Maryland Code (2001, 2008 Repl. Vol., 2013 Cum. Supp.), § 11-701 *et seq.* of the Criminal Procedure Article (hereinafter all section references to the Criminal Procedure Article of the Maryland Code are identified as "Crim. Proc. §") and held that the retroactive application of the provisions we deemed punitive violated the *ex post facto* prohibition contained in Article 17 of the Maryland Declaration of Rights. This Court's plurality opinion in *Doe I* specifically excluded any analysis of the federal Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, §§ 101-155, 120 Stat. 587, 590-611 (2006) (codified at 42 U.S.C. § 16901 *et seq.* and 18 U.S.C. § 2250). We stated, "[a]s [Doe's] federal obligations are not before us, we need not, and do not, address the issue of whether they require him to independently register." *Doe I*, 430 Md. at 544, 62 A.3d at 128.

In the instant appeal,[1] however, the State[2] asks us to consider sex offenders' "federal obligations" and whether a circuit court has the authority to direct the State to remove sex

---

[1] We have consolidated two cases for the purpose of this opinion. By order dated October 18, 2013, we accepted a certification from the Court of Special Appeals pursuant to Maryland Rule 8-304 in *Dep't of Pub. Safety & Corr. Servs. v. Doe*, Misc. No. 1, September Term, 2013. We separately granted a petition for certiorari in *Roe v. Maynard*, 435 Md. 501, 79 A.3d 947 (2013), which was subsequently recaptioned *Hershberger v. Roe* to substitute Secretary Gregg Hershberger as the named appellant in place of former Secretary Gary D. Maynard. Each case was argued separately before this Court.

[2] Although the named appellants in the instant cases are the Department of Public Safety and Correctional Services ("DPSCS"), an agency of the State, and Gregg Hershberger, as Secretary of DPSCS, the State of Maryland is actually bringing these appeals. Therefore, we shall refer to the State as the collective appellant in this opinion.

offender registration information in light of the provisions of SORNA specifically directing

sex offenders to register in the state in which they reside, work, or attend school.  We shall

hold that, notwithstanding the registration obligations placed directly on individuals by

SORNA, circuit courts have the authority to direct the State to remove sex offender

registration information from Maryland's sex offender registry when the inclusion of such

information is unconstitutional as articulated in *Doe I*.

## I. FACTUAL AND PROCEDURAL HISTORY

The instant cases involve three individuals whose underlying sex crime convictions

under state law pre-date the 2010 amendment to Maryland's sex offender registration statute.

In addition to the two individuals in the consolidated cases, we granted permission to a third

individual to participate in this appeal as an amicus.[3]

### A. John Doe ("Doe")[4]

In 2006, Doe pled guilty to and was convicted in the Circuit Court for Washington

County of a single count of child sexual abuse arising out of an incident involving

inappropriate contact with a thirteen-year-old student that occurred during the 1983-84

school year when Doe was a junior high school teacher.  Doe was sentenced to ten years

incarceration, with all but four and one half years suspended, and three years supervised

probation upon his release.  Although Doe's plea agreement did not address registration as

---

[3] *Doe v. State*, Court of Special Appeals No. 2394, September Term, 2011.

[4] John Doe is a pseudonym used after Appellee successfully moved to have his name
stricken from the record.

a sex offender as one of the conditions of probation, Doe was ordered at sentencing to

"register as a child sex offender." He was also ordered to pay a $500 fine. Following his

sentencing, Doe filed a Motion to Correct an Illegal Sentence challenging both the fine and

the requirement that he register as a child sex offender. The Circuit Court agreed with Doe

and issued an order striking the fine and the registration requirement. Doe was released from

prison in December 2008. On October 1, 2009, Doe's probation officer directed him to

register as a child sex offender. Doe maintained that he did not agree with the requirement,

but, against the advice of counsel, he registered as a child sex offender in early October 2009.

Doe subsequently filed a Complaint for a Declaratory Judgment in the Circuit Court

for Anne Arundel County (ultimately transferred to Washington County) seeking a

declaration that he not be required to register as a sex offender under the Maryland sex

offender registration statute, and that he be removed from the Maryland Sex Offender

Registry. In *Doe I*, we recounted the procedural history leading to our review on appeal as

follows:

> In October 2009, in a separate civil proceeding, [Doe] filed in the Circuit
> Court for Anne Arundel County a Complaint for a Declaratory Judgment.
> [Doe]'s Complaint advanced three arguments, including that to require him to
> register, when he was not informed of that requirement when he pled guilty,
> would improperly render his guilty plea involuntary. None of the arguments
> advanced in the Complaint, however, explicitly addressed the constitutionality
> of the registration requirement. After the State's successful "Motion for
> Transfer of Action," the case was transferred to the Circuit Court for
> Washington County, the county where [Doe] committed his crime, pled guilty,
> and was sentenced. During the Circuit Court proceedings, the parties
> addressed the issues presented in [Doe]'s Complaint. In addition, counsel for
> the State argued to the court that requiring [Doe] to register did not violate the

3

prohibition against *ex post facto* laws. At the end of the hearing, the trial judge denied [Doe]'s request for declaratory relief and ordered that [Doe] "shall not be removed from the sex offender registry."

[Doe] noted an appeal to the Court of Special Appeals. In [Doe]'s appeal, he once again contended that requiring him to register as a sex offender violated the terms of the plea agreement. In addition, [Doe] explicitly advanced challenges to the application of the statute on *ex post facto*, bill of attainder, equal protection, and due process grounds. The State argued that [Doe] failed to raise the four constitutional arguments in his Complaint and, hence, the arguments were not preserved for appeal. The intermediate appellate court determined that the due process and *ex post facto* arguments were properly raised in the trial court and, therefore, addressed them. The Court of Special Appeals, however, determined that the equal protection and bill of attainder arguments were not properly raised in the trial court and, accordingly, did not consider those issues. In an unreported opinion, the intermediate appellate court rejected all of [Doe]'s arguments and affirmed the trial court's judgment requiring [Doe] to remain on the Maryland Sex Offender Registry. (Footnotes omitted.)

*Doe I*, 430 Md. at 538-42, 62 A.3d at 126-27. We thereafter granted *certiorari* and, in a plurality opinion, held that the retroactive application to Doe of Maryland's sex offender registration statute violated Article 17 of the Maryland Declaration of Rights. We stated that "[p]ursuant to our determination that [Doe] may not be compelled to register, his name and likeness shall be removed from the Maryland Sex Offender Registry." *Doe I*, 430 Md. at 537, 62 A.3d at 124. We then directed the Circuit Court to enter a Declaratory Judgment consistent with that opinion. *Doe I*, 430 Md. at 569, 62 A.3d at 143.

Upon remand from this Court, the Circuit Court for Washington County entered judgment on April 23, 2013, granting Doe's Complaint for Declaratory Judgment. In pertinent part, Judge John H. McDowell ordered DPSCS to:

4

"[R]emove any and all information regarding Doe from the Maryland Sex Offender Registry website;

[R]emove or cause to be removed any and all information regarding Doe's sex offender registration from state and local law enforcement databases within the state of Maryland; [and]

[R]emove Doe's sex offender registration from **all federal databases including the [FBI's National Crime Information Center (NCIC)].**" (Emphasis added.)

The State subsequently filed a Motion to Alter or Amend Judgment, arguing that Doe was not entitled to the relief granted due to his registration obligations under SORNA, which this Court did not address in its opinion in *Doe I*. The Circuit Court denied the motion.

The State noted an appeal to the Court of Special Appeals from both the April 23, 2013 Order and the subsequent order denying the motion to alter or amend. The Court of Special Appeals then presented a certification to this Court, pursuant to Maryland Rule 8-304, requesting that this Court make a determination on the applicability of the *Doe I* decision to federal sex offender registration databases. We granted the certification, but modified the question as follows:

Do circuit courts have the authority to order the State to remove sex offender registration information from "federal databases"?[5]

_____

[5] The certified question from the Court of Special Appeals was originally phrased as follows:

Where federal law requires the State of Maryland to create a system for sex offender registration including a requirement that it be applied retroactively, and where the retroactive requirement is determined to violate the Maryland
(continued...)

5

Based upon his conviction of child sexual abuse, under the 2010 amendment to Maryland's sex offender registration statute, Doe is classified as a Tier III sex offender. Pursuant to that classification, if lawful, Doe would be required to register with local law enforcement every 3 months for life. *See* Crim. Proc. § 11-707(a).

## B. John Roe ("Roe")[6]

Roe pled guilty to and was convicted in the Circuit Court for Wicomico County of a third degree sex offense in 1997, arising out of a series of sexual encounters with the victim between December 1994 and January 1996. When this course of conduct began, the victim was 14 years old and Roe was 34 years old. The Circuit Court sentenced Roe to five years incarceration with all but two years suspended, and ordered that he be placed on probation for three years upon his release. Although the State requested the court require Roe to register as a sex offender, the court's order contained no registration requirement.

On September 10, 1997, upon orders from the Wicomico County Sheriff's Department, Roe registered as a child sex offender under Maryland's sex offender registration law in effect at that time and continued to register annually for a term that he

(...continued)
> Declaration of Rights, can the circuit court require the State of Maryland to remove sex offender registration information from all federal databases?

We subsequently modified this question, pursuant to our authority under Rule 8-304(c), to address directly the problem with the Circuit Court's order as perceived by this Court.

[6] John Roe is a pseudonym used after Appellee successfully moved to have his name stricken from the record.

believed would expire after ten years. At the end of the ten year period, however, Roe was advised that his name would not be removed from the registry because a 1999 amendment to Maryland's sex offender registration law extended the registration requirement from ten years to life. Although Roe was told that this amendment applied to him, the sex offender registration laws did not address retroactivity until the 2009 amendment. Nevertheless, Roe continued to register.

On September 10, 2009, Roe filed a Complaint for Declaratory Relief and Mandamus in the Circuit Court for Wicomico County, requesting a declaration that the sex offender registration statute does not apply to him and an order directing the State to remove his name from the sex offender registry. Roe argued that, based on the age of the victim and the registration law at the time of the conviction, he was not required to register as a sex offender and was improperly placed on the registry. In addition, he raised several constitutional challenges to the application of the registration law as amended in 2009.

On March 1, 2011, the Circuit Court denied Roe's request for declaratory and injunctive relief, and rejected Roe's constitutional challenges. At the time of Roe's offenses and conviction, the Maryland sex offender registration statute in effect was the 1995 version, which provided for a single classification of sex offenders and required that offenders register annually for ten years from the date of their release from prison.[7] The 2009

_____

[7] At the time of Roe's conviction, the sexual offender registration law was codified in the Maryland Code (1957, 1996 Repl. Vol.), § 792 of Article 27.

7

amendment extended the registration requirement from ten years to life, and included a provision applying the law retroactively, which would therefore apply to Roe, if lawful. In addition, while this action was pending, the 2010 amendment further modified the sex offender registration law, to create a three-tiered classification system. Under the 2010 amendment, Roe is classified as a Tier II sex offender, which requires a twenty-five year registration period. The Circuit Court concluded that Roe was required to register, directed Roe's classification as a Tier II sex offender, and credited him for the time he was previously listed on the sex offender registry.

Roe filed a timely appeal to the Court of Special Appeals. On appeal, the State conceded that Roe was not required to register at the time of his offenses or subsequent conviction because there was no registration law in effect that applied to him at that time. In an unreported opinion filed on April 2, 2013, the intermediate appellate court vacated the judgment of the Circuit Court, holding that pursuant to this Court's decision in *Doe I*, the 2009 and 2010 amendments to the registration law could not be applied retroactively to Roe, and remanded the case to the Circuit Court for Wicomico County "for further proceedings consistent with [the court's] opinion."

On June 14, 2013, after issuance of the Court of Special Appeals's opinion but before the entry of any further judgment in the Circuit Court for Wicomico County, the State filed a "Motion for Appropriate Relief," requesting that the Circuit Court declare that Roe is required to register as a Tier II sex offender pursuant to federal law, notwithstanding the

8

decision of the Court of Special Appeals. Without addressing the State's motion, and pursuant to the intermediate appellate court's mandate, the Circuit Court entered an order on August 6, 2013, virtually identical to the order at issue in *Doe*, directing the State to, in pertinent part:

> "[R]emove any and all information regarding Roe from the Maryland Sex Offender Registry website;
>
> [R]emove or cause to be removed any and all information regarding Roe's sex offender registration from state and local law enforcement databases within the state of Maryland; [and]
>
> [R]emove Roe's sex offender registration from all federal databases including the NCIC[.]"

The State filed a timely notice of appeal. Shortly thereafter, while the case was pending in the Court of Special Appeals but before any briefing or argument in that court, the State filed a petition for certiorari to this Court, which we granted on November 22, 2013, to consider the following question:[8]

> In light of the requirement imposed by federal law that each state maintain an online registry of sex offenders residing in the state and the obligation imposed on convicted sex offenders by federal law to register in the state where they reside, did the circuit court lack authority to direct the State to remove Mr. Roe from databases maintained in compliance with federal law, irrespective of his challenge to registration requirements imposed by Maryland law?

---

[8] In its petition, the State also asked whether "Maryland's sex-offender registration requirements [are] punishment within the meaning of the *ex post facto* clauses of the Constitutions of Maryland and the United States." As we shall explain, we did not grant *certiorari* with regard to this question and we will not address it. The issue on appeal is limited to whether a circuit court has the authority to direct the State to remove sex offender registration information, in light of relevant state and federal laws.

## C. Amicus John Doe ("Amicus")[9]

Pursuant to a plea agreement, Amicus was convicted of misdemeanor fifth degree criminal sexual conduct in Minnesota state court in July 2010, arising out of an incident with a schoolmate that occurred in February 2009 while Amicus was enrolled in college in Minnesota. Pursuant to his sentence, Amicus served forty days of incarceration, paid a $1,000 fine, and was placed on two years probation. He completed his probation on July 21, 2012. At the time of his conviction, Minnesota law required Amicus to register as a sex offender in Minnesota, but his registry information could only be used "for law enforcement and corrections purposes" in Minnesota. *See* Minn. Stat. § 243.166 (2013). While in Minnesota, Amicus complied fully with Minnesota's registration requirements. In July 2011, he was removed from the Minnesota registry because he had left Minnesota.

Amicus, who had left college and resumed his residency in Maryland after the February 2009 incident, inquired with the Maryland Department of Public Safety and Correctional Services in September 2010 as to whether he must register as a sex offender in Maryland. Amicus was told that he did not need to register at that time, but that pursuant to the 2010 amendment, effective October 1, 2010, he would be classified as a Tier I sex offender and required to register in Maryland every six months for fifteen years. On September 29, 2010, Amicus filed a Complaint for Declaratory and Injunctive Relief in the

---

[9] John Doe is a pseudonym used after Amicus successfully moved to have his name stricken from the record. Because there are two individuals referred to as "John Doe" in this opinion, for clarity we shall refer to this John Doe as "Amicus."

Circuit Court for Baltimore City, seeking to be excluded from the registration requirements that went into effect October 1, 2010. The Circuit Court granted the State's Motion to Dismiss and/or for Summary Judgment, but then stayed its order pending the completion of Amicus's appeals. Amicus filed a timely appeal to the Court of Special Appeals on January 9, 2012, which was stayed pending this Court's resolution of *Doe I*, and remains unresolved. To date, Amicus has never appeared on the Maryland sex offender registry.

## II. PRELIMINARY MATTERS

### A. Roe's Motion to Dismiss

Before reaching the merits of the instant cases, we shall address Roe's contention that we should not consider certain arguments. Roe includes in his brief a motion to dismiss the appeal, arguing that the State's appeal is improper for two reasons. First, Roe asserts that the State has not appealed from a final appealable order because there is no written order denying the State's "Motion for Appropriate Relief," and, moreover, the August 6, 2013 Order was entered pursuant to an appellate mandate. Therefore, Roe argues, the August 6, 2013 Order becomes part of the judgment and there is no authority for the State to appeal it. Additionally, Roe contends, the appeal is improper because the issue raised by the State on appeal was not raised in or decided by the trial court below. *See* Md. Rule 8-131(a).

The State responds that the August 6, 2013 Order was indeed a final judgment from which this appeal was timely filed. In the proceedings below, after the Court of Special Appeals had issued its mandate directing the trial court to enter an order consistent with this

11

Court's opinion in *Doe I*, the State filed a "Motion for Appropriate Relief" specifically requesting the trial court to direct Roe to register as a sex offender based on the separate registration obligation imposed on him by SORNA, notwithstanding the intermediate appellate court's decision. Although from the record there appears to be no written order denying the State's motion, the docket entries in this case show the disposition of the motion as denied on August 6, 2013, the same day the trial court entered an order granting the relief requested by Roe. Moreover, the Circuit Court's August 6, 2013 Order, granting the relief requested by Roe, operates as an effective denial of the State's "Motion for Appropriate Relief." Therefore, we treat the State's motion as having been denied. The State noted an appeal to the intermediate appellate court on September 3, 2013, and then, on September 18, 2013, petitioned this Court for *certiorari*, which we granted prior to any arguments in or decision by the Court of Special Appeals.

Roe relies on the "law of the case" doctrine to claim that the State cannot challenge an order entered pursuant to an appellate mandate. "The law of the case doctrine is one of appellate procedure. Once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." *Garner v. Archers Glen Partners, Inc.*, 405 Md. 43, 55, 949 A.2d 639, 646 (2008) (citations and quotations omitted). In other words:

> Once this Court has ruled upon a question properly presented on an appeal, or, if the ruling be contrary to a question that could have been raised and argued in that appeal on the then state of the record, as aforesaid, such a ruling becomes the 'law of the case' and is binding on the litigants and courts alike,

12

unless changed or modified after reargument, and neither the questions decided nor the ones that could have been raised and decided are available to be raised in a subsequent appeal.

*Id.* (quoting *Loveday v. State*, 296 Md. 226, 230, 462 A.2d 58, 59 (1983)). We agree with the State that Roe's use of the doctrine is misplaced. This Court, in *Doe I*, upon which the Court of Special Appeals in *Roe* based its decision, expressly declined to consider the issue presented in the instant appeal. *See Doe I*, 430 Md. at 544, 62 A.3d at 128. Nor was our holding in *Doe I*, or, by extension, the Court of Special Appeals's decision in *Roe*, "contrary to" the question now before us. Thus, there has been no "ruling" on this issue, either directly or indirectly, which would make the "law of the case" doctrine applicable here. Moreover, we held in *Loveday* that "the law of the case doctrine does not apply to this [C]ourt which is required to review judgments of subordinate courts." 296 Md. at 234, 462 A.2d at 61.

In addition, Rule 8-131(a) does not help Roe, because the record clearly demonstrates that the State raised this question in its "Motion for Appropriate Relief" which was denied by the Circuit Court when it entered judgment in favor of Roe, and as evidenced by the docket entries. Moreover, the issue on which we granted *certiorari* in this case is specifically raised, at least in part, by the language and scope of the Circuit Court's August 6, 2013 Order. Accordingly, Roe's motion to dismiss the appeal is hereby denied.

## B. Roe's Motion to Strike

Roe also includes in his Brief to this Court a motion to strike the State's argument regarding the constitutionality of Maryland's sex offender registration statute, effectively

13

requesting this Court to reconsider our decision in *Doe I*. Roe insists that we should decline to address this argument because we specifically did not grant *certiorari* on this issue, despite the State's submission of that question in its Petition for Certiorari and its arguments on that point in its Brief to this Court. The State responds that Maryland Rule 8-131(b)(2)[10] requires consideration of both issues presented on appeal. Moreover, the State asserts that reconsideration of *Doe I* is consistent with *stare decisis* because, as a plurality opinion, the decision provides inadequate guidance to the lower courts. In other words, the State claims that the fact that there is no single rationale that commanded a majority of the judges in *Doe I* presents a compelling basis for us to reconsider our earlier opinion. We agree with Roe and hereby grant the motion to strike.

It is well established that this Court has discretion to limit *certiorari* review. *See* Md. Rule 8-303(f) (disposition of petition for certiorari); *Jones v. State*, 357 Md. 408, 419, 745 A.2d 396, 402 (2000) ("The certiorari process . . . allows this Court to select and review cases that we deem to be 'desirable and in the public interest.' In exercising this broad discretion, we limit the issues that we elect to review by denying petitions for certiorari in whole or in part, so that we may deal directly with the issues selected.") (citations and quotations omitted); *Dempsey v. State,* 277 Md. 134, 143, 355 A.2d 455, 459 (1976))

---

[10] Rule 8-131(b)(2) provides that "when the Court of Appeals issues a writ of certiorari to review a case pending in the Court of Special Appeals before a decision has been rendered by that Court, the Court of Appeals will consider those issues that would have been cognizable by the Court of Special Appeals."

14

("Where this Court's order granting certiorari limits the issues to be considered, no additional questions will ordinarily be dealt with even if such additional questions were raised in the petition or in a cross-petition."); *Walston v. Sun Cab Co.*, 267 Md. 559, 569, 298 A.2d 391, 397 (1973) ("In sum, except in most extraordinary circumstances, we will consider on an appeal resulting from a grant of a writ of certiorari only those questions raised in the petition and matters relevant to those questions, . . . unless, of course, we have limited in our order granting certiorari the issues to be considered on that appeal."). Our order granting the petition for certiorari in the instant case expressly stated that the petition be "granted, limited to the following issue: 'In light of the requirement imposed by federal law that each state maintain an online registry of sex offenders residing in the state and the obligation imposed on convicted sex offenders by federal law to register in the state where they reside, did the circuit court lack authority to direct the State to remove Mr. Roe from databases maintained in compliance with federal law, irrespective of his challenge to registration requirements imposed by Maryland law?'" Accordingly, our review is confined to this question. Had we considered the State's other question, we would have rejected it on the basis of *stare decisis*.

### C. Standard of Review

The parties dispute the appropriate standard to guide our review of this case. The State asserts that we should apply a *de novo* standard of review to these declaratory judgment actions involving the interpretation and application of statutes. On the other hand, Doe and Roe (collectively "Appellees") contend that, because this case concerns a trial court order,

15

the correct standard of review is abuse of discretion. Appellees' argument misses the point. Although in many instances we review a trial court order for abuse of discretion, or apply "interrelated standards" of review, *see Kusi v. State*, __ Md. __ (2014) (discussing the application of multiple "tiers of review"), the issue surrounding the order in this case involves an interpretation and application of Maryland as well as federal statutory and case law. Therefore, we "must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004) (quoting *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002)).

## III. DISCUSSION

In these consolidated cases, the State argues that the Circuit Court cannot order the removal of Appellees from Maryland's registry because each individual sex offender has a federal obligation to register in his home state, independent of state law to the contrary. Further, the State contends that it cannot be compelled to remove Appellees' information from the registry because to do so would put Appellees in violation of their federal obligations. In addition, the State asserts that the Circuit Court's order requiring removal of these offenders from Maryland's registry threatens Maryland's ability to receive federal funding through compliance with SORNA.

First, Appellees argue that the State has no standing to claim on behalf of the federal government that they must register pursuant to SORNA, and point out that the State has not

actually lost any federal funding as a result of this Court's decision in *Doe I*. The State

responds that it has standing because this appeal challenges a trial court order that included

declaratory and injunctive relief against it. We agree with the State that Appellees' standing

argument is without merit. In our view, Appellees' argument mischaracterizes the nature of

the appeal. The orders at issue in both cases under review were entered as the result of

declaratory judgment actions. As the State correctly notes, the trial court's orders directed

the State to take certain actions, namely, to remove Appellees from Maryland's sex offender

registry and "from all federal databases including the NCIC." Ultimately, the State's

challenge on appeal asks us to review the propriety of this order; that is, whether the courts

can require the State to remove registration information. As we will discuss, the answer to

this question requires us to consider and interpret federal statutes as well as Maryland

statutes. Although there is no indication in the record that the State has lost any federal

funding as a result of *Doe I*, or that any of the Appellees have been charged in federal court

with failure to register under 18 U.S.C. § 2250, these facts do not affect our analysis of this

case.

As to the merits of the appeal, Appellees argue that the circuit courts have the

authority to order the State to remove sex offender registration information from Maryland's

registry pursuant to this Court's decision in *Doe I*. Appellees assert that federal law cannot

require them to register in Maryland when to do so would violate their rights under the

Maryland constitution.[11]  Moreover, Appellees contend that the State's interpretation of

SORNA, namely, that there exists an "independent registration requirement" obligating them

to register in Maryland despite this Court's holding that such registration violates the

Maryland Declaration of Rights, would yield an unconstitutional result.  An interpretation

of SORNA to that effect, they argue, would violate the 10th Amendment, the Commerce

Clause, and the Spending Clause of the United States Constitution.  We shall decline to

address Appellees' constitutional arguments, as they are unnecessary for our holding in this

case.  *See VNA Hospice of Md. v. Dep't of Health & Mental Hygiene*, 406 Md. 584, 604, 961

A.2d 557, 569 (2008) ("This Court has emphasized, time after time, that the Court's strong

and established policy is to decide constitutional issues only when necessary.") (citations and

quotations omitted); *Christopher v. Montgomery Cnty. Dep't of Health & Human Servs.*, 381

---

[11] Amicus characterizes the State's argument as "one of backdoor preemption," in that the State would use the federal law to effectively override this Court's decision in *Doe I.*  We do not disagree with this characterization.  Although we need not engage in any constitutional preemption analysis, we note that the federal statute itself does not purport to "preempt the field" of sex offender registration, and in fact, 42 U.S.C. § 16925(d) specifically provides that "[t]he provisions of this subchapter that are cast as directions to jurisdictions or their officials constitute, in relation to States, only conditions required to avoid the reduction of Federal funding under this section."  Additionally, the regulations promulgated by the United States Attorney General further explain that SORNA has no implicit preemptive effect either, because the Act "obviously leaves room for states (and other jurisdictions) to supplement its requirements" and "[s]ome provisions in SORNA expressly authorize variations among jurisdictions[,]" citing SORNA § 125(b), 42 U.S.C. § 16925(b), and explaining that it "authoriz[es] accommodation of state constitutional restrictions."  Office of the Attorney General, *The National Guidelines for Sex Offender Registration and Notification* ("National Guidelines"), 73 Fed. Reg. 38,030, 38,034-35 (July 2, 2008).

Md. 188, 217, 849 A.2d 46, 63 (2004) ("[W]e adhere to the established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground.") (citations and quotations omitted). Rather, our analysis of this case depends solely on statutory interpretation.

We will discuss first whether an "independent federal registration requirement" imposed directly on sex offenders by SORNA operates to prevent the State from removing registration information. Because we answer that question in the negative, we will then address the certified question presented by the Court of Special Appeals regarding the language and scope of the Circuit Court's order directing removal of Doe's registration information.

## A. Sex Offenders' Obligations under SORNA

Congress enacted SORNA, Title I of the Adam Walsh Child Protection and Safety Act of 2006, "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for the registration of those offenders[.]" 42 U.S.C. § 16901. The Act replaced several earlier registration laws,[12] and, as noted by the

---

[12] *See* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14071 *et seq.* As explained in the Attorney General's guidelines, "[s]ince the enactment of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (42 U.S.C. § 14071) in 1994, there have been national standards for sex offender registration and notification in the United States. All states currently have sex offender registration and notification programs and have endeavored to implement the Wetterling Act standards in their existing programs." National Guidelines, 73 Fed. Reg. at 38,030.

19

Supreme Court, "reflects Congress's awareness that pre-Act registration law consisted of a patchwork of federal and 50 state registration systems." *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012). Thus, the goal of the Act was to streamline and homogenize sex offender registration and notification systems throughout the states. *See* Office of the Attorney General, *The National Guidelines for Sex Offender Registration and Notification* ("National Guidelines"), 73 Fed. Reg. 38,030 (July 2, 2008) ("The SORNA reforms are generally designed to strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate potential gaps and loopholes under the pre-existing standards . . . .").

The Act sets forth "minimum national standards" for jurisdictions' sex offender registration and notification programs. 42 U.S.C. § 16912 ("Registry requirements for jurisdictions"); National Guidelines, 73 Fed. Reg. at 38,032. One such standard is the application of the registration requirements to pre-Act offenders, *i.e.* retroactivity. *See* 42 U.S.C. § 16911(1) (defining "sex offender" as "an individual who was convicted of a sex offense"); *Reynolds*, 132 S. Ct. at 978 ("The Act defines the term 'sex offender' as including these pre-Act offenders."). Although framed as requirements, the statute makes clear that "[t]he provisions of this subchapter that are cast as directions to jurisdictions or their officials constitute, in relation to States, only conditions required to avoid the reduction in Federal funding under this section." 42 U.S.C. § 16925(d).

Maryland implemented SORNA through amendments in 2009 and 2010 to its

preexisting registration statute. *See Doe I*, 430 Md. at 545-46, 62 A.3d at 129 (providing background on the evolution of Maryland's sex offender registration laws). It is the retroactive provisions of the 2009 and 2010 amendments with which we were concerned in *Doe I*, and which we held to be unconstitutional. 430 Md. at 568, 62 A.3d at 143. In particular, the 2009 amendments specifically addressed the retroactive application of the registration statute. *See* Crim. Proc. § 11-702.1 (2001, 2008 Repl. Vol., 2009 Cum. Supp.). The 2010 amendments established a "tier" system of offenders[13] based upon the nature of the offender's conviction, which corresponds to the "tiers" defined in SORNA. *See* Crim. Proc. § 11-701(l) (2001, 2008 Repl. Vol., 2013 Cum. Supp.). *See also* 42 U.S.C. § 16911.

On July 19, 2011, the United States Department of Justice's SMART Office[14] published a revised "SORNA Substantial Implementation Review" for the State of Maryland, concluding that Maryland's registration program substantially complies with SORNA's requirements. *See* U.S. Dep't of Justice, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART Office"), SORNA Substantial Implementation Review State of Maryland – Revised (July 19, 2011),

---

[13] Tier III is the most severe designation, requiring registration every three months for life, whereas Tier II offenders must register every six months for 25 years, and Tier I offenders must register every six months for 15 years. *See* Crim. Proc. § 11-707(a) (2001, 2008 Repl. Vol., 2013 Cum. Supp.). *See also* 42 U.S.C. § 16915(a).

[14] The Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART), within the U.S. Department of Justice, was established by SORNA to administer the programs created under SORNA and to provide guidance to jurisdictions regarding implementation of sex offender registration and notification programs. *See* 42 U.S.C. § 16945.

21

http://ojp.gov/smart/pdfs/sorna/Maryland.pdf. As of the date of this opinion, the SMART

Office website identifies only 17 states, including Maryland, as having successfully

substantially implemented SORNA. *See* U.S. Dep't of Justice, SMART Office,

http://ojp.gov/smart/sorna.htm (last visited June 20, 2014) (identifying 17 states and 3

territories as having "substantially implemented" SORNA). *See also* U.S. Gov't

Accountability Office, GAO-13-211, *Sex Offender Registration and Notification Act:*

*Jurisdictions Face Challenges to Implementing the Act, and Stakeholders Report Positive*

*and Negative Effects* (2013) (discussing the SMART Office and its determinations regarding

substantial implementation of SORNA by individual jurisdictions, noting that one of the

challenges presented by states in implementing SORNA concerns retroactive application).

In addition to the provisions directed at jurisdictions, SORNA includes an express

provision regarding "[r]egistry requirements for sex offenders." 42 U.S.C. § 16913.

Specifically, the statute provides that "[a] sex offender shall register, and keep the

registration current, in each jurisdiction where the offender resides, where the offender is an

employee, and where the offender is a student." 42 U.S.C. § 16913(a). In addition, SORNA

§ 141(a), 18 U.S.C. § 2250(a), imposes criminal penalties for failing to register on:

> [W]hoever (1) is required to register under [SORNA]; (2) (A) is a sex offender
> as defined for the purposes of [SORNA] by reason of a conviction under
> Federal law (including the Uniform Code of Military Justice), the law of the
> District of Columbia, Indian tribal law, or the law of any territory or
> possession of the United States; or (B) travels in interstate or foreign
> commerce, or enters or leaves, or resides in, Indian country; and (3) knowingly
> fails to register or update a registration as required by [SORNA].

22

18 U.S.C. § 2250(a).

The State refers to 42 U.S.C. § 16911 as providing an "independent federal registration obligation" imposed directly on sex offenders. This obligation, the State argues, is both "separate and distinct from a state's own sex offender registration requirements" and "completely separate from those provisions of SORNA that address the states' compliance with SORNA's requirements." Therefore, in the State's view, Appellees must register as sex offenders in Maryland as a matter of federal law, notwithstanding this Court's holding in *Doe I*. In other words, the State asserts, the courts cannot force the State to remove sex offender registration information because the individual sex offenders have an independent obligation under federal law to register with the state in which they reside, work, or attend school.

The State relies on *United States v. Gould*, 568 F.3d 459 (4th Cir. 2009), for its contention that, irrespective of Maryland law, Appellees must register as sex offenders in Maryland because SORNA imposes a registration requirement on individuals that is "independent of the requirement imposed on the States to implement the enhanced registration and notification standards of SORNA." *Gould*, 568 F.3d at 465. In *Gould*, the defendant was convicted of a sex offense in 1985 in the District of Columbia, where he was originally required to register as a sex offender pursuant to pre-SORNA federal and D.C. law. *Gould*, 568 F.3d at 461. He moved to Maryland in August 2006,[15] but did not register

---

[15] SORNA was enacted on July 27, 2006, prior to Gould's move to Maryland. *Gould*, 568 F.3d at 461.

as a sex offender in Maryland. *Gould*, 568 F.3d at 462. Approximately one year later, Gould was charged with and convicted of failing to register under 18 U.S.C. § 2250(a) in the United States District Court for the District of Maryland. *Id.* Gould appealed his conviction, arguing that he could not be convicted under SORNA for failing to register as a sex offender in Maryland because Maryland had not yet implemented SORNA. *Id.*

The Fourth Circuit rejected Gould's arguments, holding that Gould was required to register in Maryland because his registration obligations under SORNA were not contingent on Maryland's implementation of SORNA. Despite the fact that Maryland had not yet implemented SORNA, the Fourth Circuit noted that Maryland did have a pre-SORNA program through which Gould "could register and indeed was required to register." 568 F.3d at 464. More importantly, the Fourth Circuit pointed out that "the structure of SORNA's requirements indicates a separateness of the sex offenders' individual duty to register and the State's duty to enhance its registries and standards as mandated by the Act." *Id.* Thus, the Fourth Circuit "conclude[d] that the requirement imposed on individuals to register is independent of the requirement imposed on the States to implement the enhanced registration and notification standards of SORNA." *Gould*, 568 F.3d at 465.

One year later, in *Kennedy v. Allera*, 612 F.3d 261 (4th Cir. 2010), the Fourth Circuit again discussed the separateness of SORNA's registration requirements. In 1980, Kennedy had been convicted in California federal court of rape and murder. In 2000, he was released from federal prison to the supervision of the U.S. Parole Commission in the District of

24

Maryland. At that time, one of Kennedy's conditions of probation specified that he must "report for registration with [his] state sex offender registration agency." *Kennedy*, 612 F.3d at 263. Although he initially objected to the registration requirement, Kennedy reported to the Wicomico County Sheriff's Office to register as a sex offender at the beginning of his parole term, as directed by his U.S. Probation Officer, Michael Allera. *Id.* Officer Allera withdrew his instruction to Kennedy, however, when the Sheriff's Office refused to accept Kennedy's registration because it was not required under Maryland law. *Kennedy*, 612 F.3d at 263-64. Then in 2004, the Parole Commission modified Kennedy's parole conditions, which Kennedy challenged by filing a petition for habeus corpus in the United States District Court for the District of Maryland. After SORNA was enacted but while the petition was still pending, Officer Allera again officially instructed Kennedy to register as a sex offender pursuant to SORNA. Kennedy supplemented his petition, challenging the registration requirement, and filed a motion for a temporary restraining order and preliminary injunction to enjoin Officer Allera from requiring him to register. *Kennedy*, 612 F.3d at 264. The district court denied both the petition and the motion for an injunction. *Kennedy*, 612 F.3d at 265.

On appeal, the Fourth Circuit noted Kennedy's "independent duty as a sex offender to register under SORNA" in rejecting Kennedy's argument that he was not required to register by Maryland law and was therefore prohibited from registering in Maryland. *Kennedy*, 612 F.3d at 267-68. Like in *Gould*, the Fourth Circuit stated that "Maryland law

25

creates a sex offender registry in which Kennedy can register even if we were to assume, for purposes of argument, that Maryland law does not of its own force require him to register." *Kennedy*, 612 F.3d at 268. Thus, the Fourth Circuit concluded that "because SORNA lawfully imposes, as a matter of federal law, registration obligations directly on sex offenders, such as Kennedy, . . . Kennedy is not relieved of that duty by any restriction in Maryland law or by Maryland's failure to implement SORNA." *Kennedy*, 612 F.3d at 263.

What the State fails to recognize in its reliance on *Gould*, *Kennedy*, and additional federal circuit courts of appeals decisions in accord with the Fourth Circuit,[16] is the distinguishing fact that in those federal cases, the purported obstacle to registration was that Maryland had not yet *implemented* SORNA. By contrast, here Appellees' asserted stumbling block is that this Court has declared the retroactive application of Maryland's sex offender registry to be *unconstitutional* under the Maryland Declaration of Rights. Keeping in mind the rules of statutory construction and the canon against surplusage," we return to the language of the federal statute for guidance. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1178, 185 L. Ed. 2d 242, 256 (2013) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 1301, 146 L. Ed. 2d 121, 134 (2000) ("It is a fundamental canon of statutory

---

[16] *See United States v. Brown*, 586 F.3d 1342, 1349 (11th Cir. 2009); *United States v. Guzman*, 591 F.3d 83, 93 (2d Cir. 2010); *United States v. George*, 625 F.3d 1124, 1128 (9th Cir. 2010); *United States v. Felts*, 674 F.3d 599, 602 (6th Cir. 2012).

construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.") (citations and quotations omitted); *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 275, 983 A.2d 138, 153 (2009) (We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.") (citations and quotations omitted).

We do not dispute that by its plain meaning, 42 U.S.C. § 16913 provides an "independent duty as a sex offender to register under SORNA," *Kennedy*, 612 F.3d at 267-68, that is "independent of the requirement imposed on the States to implement the enhanced registration and notification standards of SORNA" contained in 42 U.S.C. § 16912. *Gould*, 568 F.3d at 465. Our analysis cannot end there, however. As we have oft repeated, in interpreting statutes, we

> do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

*Gardner v. State*, 420 Md. 1, 9, 20 A.3d 801, 806 (2011) (quoting *State v. Johnson*, 415 Md. 413, 421-22, 2 A.3d 368, 373 (2010)).

SORNA § 125(b), 42 U.S.C. § 16925(b), expressly addresses the possibility of a conflict between SORNA's provisions and a state constitution, "as determined by a "ruling of the jurisdiction's highest court."  This provision not only recognizes the possibility of unconstitutionality but also provides directions for the jurisdiction and the United States Attorney General to collaborate to find "reasonable alternative procedures or accommodations" consistent with the purpose of SORNA, should this situation arise.  This section reads:

(b) State Constitutionality.

(1) In general. When evaluating whether a jurisdiction has substantially implemented this subchapter, the Attorney General shall consider whether the jurisdiction is unable to substantially implement this subchapter because of a demonstrated inability to implement certain provisions that would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court.

(2) Efforts.  If the circumstances arise under paragraph (1), then the Attorney General and the jurisdiction shall make good faith efforts to accomplish substantial implementation of this subchapter and to reconcile any conflicts between this subchapter and the jurisdiction's constitution. In considering whether compliance with the requirements of this subchapter would likely violate the jurisdiction's constitution or an interpretation thereof by the jurisdiction's highest court, the Attorney General shall consult with the chief executive and chief legal officer of the jurisdiction concerning the jurisdiction's interpretation of the jurisdiction's constitution and rulings thereon by the jurisdiction's highest court.

(3) Alternative procedures.  If the jurisdiction is unable to substantially implement this subchapter because of a limitation imposed by the jurisdiction's constitution, the Attorney General may determine that the jurisdiction is in compliance with this chapter if the jurisdiction has made, or is in the process of implementing reasonable alternative procedures or accommodations, which are consistent with the purposes of this chapter.

28

42 U.S.C. § 16925(b). Additionally, pursuant to its authorization under SORNA, the United States Attorney General has expounded upon this section and provided further guidance to jurisdictions faced with this scenario. *See* 42 U.S.C. § 16912(b). The Attorney General's National Guidelines provide:

> SORNA § 125(b)[, 42 U.S.C. § 16925(b),] includes special provisions for cases in which the highest court of a jurisdiction has held that the jurisdiction's constitution is in some respect in conflict with the SORNA requirements. If a jurisdiction believes that it faces such a situation, it should inform the SMART Office. The SMART Office will then work with the jurisdiction to see whether the problem can be overcome, as the statute provides. If it is not possible to overcome the problem, then the SMART Office may approve the jurisdiction's adoption of reasonable alternative measures that are consistent with the purposes of SORNA.

National Guidelines, 73 Fed. Reg. at 38,048.

In our view, the addition of SORNA § 125(b), 42 U.S.C. § 16925(b), with the help of the Attorney General's guidelines relating thereto, clearly demonstrates Congress's contemplation of the precise situation confronting us in this case. Further, the language of the statute stating that the jurisdiction shall work with the Attorney General to implement "alternative procedures" to accomplish SORNA's goals indicates that deference shall be given to the determination of unconstitutionality under state law. This Court, the highest court of the State of Maryland, has declared that a portion of Maryland's legislation implementing SORNA's "minimum national standards" violates the Maryland Declaration of Rights. To arrive at the State's proposed interpretation of the statute–that Appellees must register in Maryland even if doing so violates their rights under Maryland's

29

constitution–would render SORNA § 125, 42 U.S.C. § 16925, useless surplusage. Accordingly, we conclude that, notwithstanding any requirements imposed upon sex offenders by SORNA, where we have declared the retroactive application of Maryland's sex offender registry to be unconstitutional, the State must remove Appellees' information from the registry.  In our view, SORNA specifically provides for this situation, and given our holding in *Doe I*, it is now left to the State to establish reasonable alternative procedures, if any, that are both "consistent with the purposes of SORNA" and permissible under the Maryland Declaration of Rights.

This conclusion is not inconsistent with federal guidance regarding sex offender registration. For example, the United States Department of Justice SMART Office has stated that "[f]ederal courts have interpreted SORNA as directly imposing a duty on a person to attempt to register if they meet the federal definition of 'sex offender'[,]" but "a jurisdiction will not register an offender unless *that jurisdiction's laws* require that the offender be registered."   U.S. Dep't of Justice, SMART Office, *Sex Offender Registration and Notification in the United States: Current Case Law and Issues* 5-6 (August 2013), http://www.smart.gov/caselaw/handbook_august2013.pdf (emphasis in original).  In other words, there will be situations where SORNA imposes a registration requirement directly on an offender, but the jurisdiction where that offender lives, works, or attends school refuses to register him because the jurisdiction's laws do not require registration for the offense of conviction." *Id.* at 6 n.39.  The Fourth Circuit also apparently noted this distinction in

*Kennedy*, where the court stated that "while SORNA imposes a duty *on the sex offender* to register, it nowhere imposes a requirement *on the State* to accept such registration." 612 F.3d at 269 (emphasis in original).

Accordingly, although *Gould* and *Kennedy* clarify that SORNA creates a direct obligation on sex offenders to register in their home state, independent of that state's *implementation* of SORNA, the state need not accept the registration if doing so would be contrary to state law. This is precisely the case here. The State cannot legally accept a sex offender's involuntary registration when that individual's registration is unconstitutional under Maryland law. This conclusion is also consistent with the Circuit Court's order directing *the State* to remove information from the registry. In other words, the Circuit Court has ordered the State to refuse to accept Appellees' registration information.[17]

We are not the only state appellate court to have declared the retroactive or retrospective application of sex offender registration laws to be in violation of the state's constitution. *See Starkey v. Oklahoma Dep't of Corr.,* 305 P.3d 1004 (Okla. 2013) (holding

---

[17] We note that this would not necessarily be a first for the State. In *Kennedy*, albeit prior to the enactment of SORNA or Maryland's implementation thereof, the Wicomico County Sheriff's Office rejected Kennedy's registration because it "conclud[ed] that Kennedy was not required to register under Maryland law." *Kennedy*, 612 F.3d at 263-64. The Fourth Circuit went on to note, in rejecting Kennedy's argument that the order of the Parole Commissioner requiring him to register in Maryland violated the 10th Amendment, the order does not "undertake[] to obligate the State of Maryland or the Sheriff of Wicomico County to accept his registration. To the contrary, the condition commands only Kennedy, directing *him* to report to the Sheriff's Office and register." *Kennedy*, 612 F.3d at 269. We also note that, unlike *Gould* and *Kennedy*, none of the Appellees have been charged with failing to register, either under state or federal law.

31

that the retroactive application of state's sex offender registration law violated *ex post facto* prohibition in state constitution); *State v. Williams*, 952 N.E.2d 1108, 1113 (Ohio 2011); *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009) (same); *State v. Letalien*, 985 A.2d 4 (Me. 2009) (same); *Doe v. State*, 189 P.3d 999 (Alaska 2008) (same); *Doe v. Phillips*, 194 S.W.3d 833 (Mo. 2006) (holding that Missouri's sex offender registration law violated the state constitutional ban on laws retrospective in operation). To date, only two of these states have addressed the next level inquiry, *i.e.*, a conflict between SORNA's requirements and the state constitution. They are divided as to how to manage those individuals to whom the retroactive application of the state statute(s) is unconstitutional.

On the one hand, the Supreme Court of Missouri has concluded that there is an "independent registration requirement under SORNA [that] operates irrespective of any allegedly retrospective state law that has been enacted and may be subject to the [state constitutional] ban on the enactment of retrospective state laws." *Doe I v. Keathley*, 290 S.W.3d 719, 720 (Mo. 2009). The Missouri Supreme Court subsequently qualified its holding, noting that Missouri's registration statute specifically includes and "appl[ies] to any person who 'has been' required to register as a sex offender *pursuant to federal law*." *Doe v. Toelke*, 389 S.W.3d 165, 167 (Mo. 2012) (emphasis added). Thus, Missouri courts have concluded that "SORNA imposes an independent, federally mandated registration requirement . . . which triggers [the] duty to register in Missouri pursuant to [Missouri's registration statute]." *Grieshaber v. Fitch*, 409 S.W.3d 435, 439 (Mo. App. E.D. 2013)

(citing *Keathley* and *Toelke*). In other words, in Missouri, the state registration requirement is based on an independent federal registration requirement. *See Roe v. Replogle*, 408 S.W.3d 759, 769 (Mo. 2013) (addressing 42 U.S.C. § 16925(b) and concluding that it "provides no relief to [the appellant in that case] because Missouri may require him to register under SORNA without violating its own constitution").

Indiana appellate courts have decided differently. In 2009, the Supreme Court of Indiana in *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009), held that the Indiana sex offender registration statute was unconstitutional as applied retroactively to Mr. Wallace. Subsequently, the Court of Appeals of Indiana in *Andrews v. State*, 978 N.E.2d 494 (Ind. Ct. App. 2012), *transfer denied*, 985 N.E.2d 339 (Ind. 2013) addressed whether a "federal duty" to register would require the defendant to register as a sex offender notwithstanding the Indiana Supreme Court's decision in *Wallace*. Stating that the Indiana Supreme Court "concluded in *Wallace* that Hoosiers are entitled to greater protection under the prohibition on ex post facto laws contained in the Indiana Constitution," the court held that Andrews could not be required to register as a sex offender in Indiana. *Andrews*, 978 N.E.2d at 502-03. In so holding, the court also noted that Congress "[a]cknowledge[ed] that some provisions of [the federal SORNA] may not pass state constitutional muster" by enacting 42 U.S.C. § 16925, and that "[t]he U.S. Department of Justice recognizes that sex offender registration is conducted at the state level and that each jurisdiction has the authority to determine which offenders will be required to register." *Andrews*, 978 N.E.2d at 502 n.7-8.

Accordingly, in *Andrews*, as well as in a second case, *State v. Hough*, 978 N.E.2d 505 (Ind. Ct. App. 2012), the Court of Appeals of Indiana directed the lower courts to grant the defendant's "petition for removal of his name from Indiana's sex offender registry." *Andrews*, 978 N.E.2d at 503;[18] *Hough*, 978 N.E.2d at 510-11.

We agree with the reasoning of the Court of Appeals of Indiana. Based on our holding in *Doe I*, Marylanders, like Hoosiers, enjoy "greater protection under the prohibition on ex post facto laws" of the Maryland Declaration of Rights. *Andrews*, 978 N.E.2d at 502. Where Appellees would only be required to register in Maryland, and where we have held that the retroactive application of the Maryland registry is unconstitutional, they, and individuals similarly situated in Maryland, cannot be required to register in Maryland. The language of SORNA expressly providing for a conflict between the federal law and state constitutions, as well as the available federal guidance on the topic, leads us to the conclusion

---

[18] As a collateral matter, we note that the Court of Appeals of Indiana indicated that Andrews may have a separate obligation to register pursuant to the federal statute when he engages in interstate travel. *Andrews*, 978 N.E.2d at 502. The court emphasized the fact that "Indiana [was] the only state that [had] ever required Andrews to register as a sex offender . . . . But while Andrews may have a federal duty to register under [the federal SORNA] if he engages in interstate travel, and could be subject to prosecution in federal district court under 18 U.S.C. § 2250, if he fails to do so, [that was] not the issue before [the court]." *Andrews*, 978 N.E.2d at 502. Likewise, Appellees in this case have not been charged with failure to register under either Maryland or federal law. Although this issue is not before us, we note that the Supreme Court has observed that "as far as we can tell, while SORNA punishes violations of its requirements (instead of violations of state law), the Federal Government has prosecuted a sex offender for violating SORNA only when that offender also violated state-registration requirements." *United States v. Kebodeaux*, 133 S. Ct. 2496, 2505 (2013). Our conclusion in this case is limited to the registration obligations of individuals residing, working, or attending school in Maryland.

that so long as Appellees are in Maryland, they cannot be required to register as sex offenders in Maryland, notwithstanding the registration requirements imposed directly on individuals by SORNA.

## C. Certified Question

As modified by this Court, the certified question from the Court of Special Appeals in *Department of Public Safety & Correctional Services v. Doe* asks whether circuit courts have the authority to order the State to remove sex offender information from "federal databases." We conclude that the language in the order that purports to direct the State to remove information from "federal databases" is incorrect. Consequently, the Circuit Court's order must be revised.

The "federal databases" at issue include: the National Sex Offender Registry ("NSOR"), the National Crime Information Center ("NCIC"), and the National Sex Offender Public Website ("NSOPW"). The NSOR was authorized and created by the Pam Lychner Sexual Offender Tracking and Identification Act of 1996, Pub. L. No. 104–236, 110 Stat. 3093, 3096–98, to allow the FBI to monitor and track offenders. The NSOR has since been incorporated into the FBI's NCIC, which is a law enforcement internal database. According to the FBI's website, "NCIC has operated under a shared management concept between the FBI and federal, state, local, and tribal criminal justice users since its inception." *See* Federal Bureau of Investigation, *National Crime Information Center*, http://www.fbi.gov/about-us/cjis/ncic/ncic (last visited June 20, 2014). Further, the FBI

35

describes the function of the NCIC as follows:

> Criminal justice agencies enter records into NCIC that are accessible to law enforcement agencies nationwide. For example, a law enforcement officer can search NCIC during a traffic stop to determine if the vehicle in question is stolen or if the driver is wanted by law enforcement. The system responds instantly. However, a positive response from NCIC is not probable cause for an officer to take action. NCIC policy requires the inquiring agency to make contact with the entering agency to verify the information is accurate and up-to-date.

*Id.* Accordingly, the agency where sex offender registration was initiated would be responsible for the updating and removal of that information from the NCIC.

Similarly, the NSOPW, maintained now by the U.S. Department of Justice, is not in fact a separate registration system, but rather is a compilation of all state registries, allowing a member of the public to search all state records in one place. *See* U.S. Dep't of Justice, *Dru Sjodin National Sex Offender Public Website*, http://www.nsopw.gov/en/Home/About (last visited June 20, 2014); U.S. Dep't of Justice, SMART Office, *Sex Offender Registration and Notification in the United States: Current Case Law and Issues* 2 (August 2013), http://www.smart.gov/caselaw/handbook_august2013.pdf. In other words, the NSOPW functions as a search engine. As a practical matter, then, by ordering the State of Maryland to remove records from the Maryland state registry, those records will also no longer appear in the NSOPW.

We conclude that the Circuit Court's use of the phrase "federal databases" is misleading. It is true that the above databases are all managed by federal agencies; however, the information contained in each is provided by the State. Therefore, in the context of sex

36

offender registration databases, the only relevant database is the Maryland registry.[19] More importantly, the State is responsible for the accuracy, updating, and removal of this information. *See* Crim. Proc. § 11-713; Md. Code Regs. 12.06.01.08 (2010).

The Sex Offender Registry Unit, within the Department of Public Safety and Correctional Services, is in charge of the maintenance of all sex offender registration information for the State. Pursuant to Maryland regulations, the Sex Offender Registry Unit has the authority to maintain Maryland's central registry, as well as to manage and authorize termination of registration. *See* Md. Code Regs. 12.06.01.01-.18. Part of the Unit's responsibility is to exchange information, including registration status, with federal agencies. *See* Md. Code Regs. 12.06.01.08. The combination of the nature of "federal databases" plus the regulations governing the maintenance of sex offender registration leads us to the conclusion that if the State removes "any and all information regarding Doe from the Maryland Sex Offender Registry," that information would be automatically removed from any other "databases" where that information can be stored or accessed. Moreover, although the State cannot directly remove information from "federal databases," the State is responsible for notifying all relevant federal agencies when registration information is removed from Maryland's registry. *See id.*

Accordingly, in response to the certified question from the Court of Special Appeals, we conclude that the Circuit Court incorrectly ordered the State to remove Doe's information

---

[19] All parties agree that the only relevant database is the one the State maintains.

from "federal databases," however, the court does have the authority to compel the State to remove all of its records relating to Doe's registration as a sex offender, and to notify federal agencies of his removal from the Maryland registry. On remand, therefore, the Court of Special Appeals should modify the Circuit Court's order and direct the State to: "Remove any and all information regarding Doe from the Maryland Sex Offender Registry website and any additional database(s) where the State has published such information, and notify all relevant federal agencies of the removal of Doe's information from Maryland's registry."[20]

**CERTIFIED QUESTION ANSWERED AS SET FORTH HEREIN. IN CASE #103, JUDGMENT OF THE CIRCUIT COURT AFFIRMED AS MODIFIED CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**

---

[20] Maryland may be inclined to follow, as an example, the steps taken by Indiana to inform sex offenders of their rights and obligations through the State's sex offender registration website. *See* Indiana Dep't of Correction, Sex & Violent Offender Registry, http://www.in.gov/idoc/3285.htm (last visited June 11, 2014).

Argued: 6 May 2014

Circuit Court for Washington County
Case No. 21-C-10-36507

Circuit Court for Wicomico
County

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 1
September Term, 2013

DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONAL SERVICES

v.

JOHN DOE

No. 103
September Term, 2013

GREGG HERSHBERGER

v.
.
JOHN ROE

Barbera, C.J.,
Harrell,
Greene,
Adkins,
McDonald,
*Watts,
Wilner, Alan M. (Retired,
            Specially assigned),

JJ.

Concurring Opinion by Harrell, J.
_____

Filed: June 30, 2014

*Watts, J., participated in the hearing and
conference of this case but did not
participate in the decision and adoption
of this opinion.

I did not join the reasoning (the unconstitutionality of the Maryland statute) of the plurality of the judges in *Doe v. Department of Public Safety & Correctional Services*, 430 Md. 535, 62 A.3d 123 (2013) ("*Doe I*"). Rather, I concurred based on a view that Doe was entitled to specific performance of the terms of his guilty plea. *Doe*, 430 Md. at 569, 62 A.3d at 143. I rejected the plurality's constitutionality analysis. *Id.*

That having been noted, I concur in the judgment of the Court's opinion in the present case, assuming that *Doe I* was decided correctly. It is, after all, the law of Maryland.